# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

HISPANIC FEDERATION and
THE SOLAR FOUNDATION,

Plaintiffs,

v.

ALEJANDRO J. URIARTE-OTHEGUY,

Defendant.

CIVIL NO.  21-1573 (HRV)

## OPINION AND ORDER

### BACKGROUND

Plaintiffs Hispanic Federation and the Solar Foundation (hereinafter "Plaintiffs") are two nonprofit corporations that funded the construction of a solar energy station in San Juan, Puerto Rico, after two hurricanes devasted the island's energy infrastructure in 2017.  The complaint, filed on November 30, 2021, alleges that Plaintiffs contracted with defendant Alejandro J. Uriarte-Otheguy (hereinafter "Uriarte-Otheguy" or "Defendant") to build the solar energy station, but Defendant never completed the project despite having been paid more than $800,000. (Docket No. 1).  Plaintiffs bring causes of action for fraudulent inducement (Dolo), fraud, and unjust enrichment. (*Id.*)

On July 11, 2024, the court ordered the entry of default against the Defendant as a sanction for discovery violations and noncompliance with court orders. (Docket Nos. 73 and 74).  A hearing pursuant to Fed. R. Civ. P. 55(b)(2) was held to determine

damages. (Docket No. 84). Uriarte-Otheguy did not appear. In fact, he has failed to prosecute this case since at least May of this year, after his attorneys requested and were granted leave to withdraw. (*See* Docket No. 68).

At the default hearing, Plaintiffs presented argument through counsel and introduced documentary evidence in support of their request that judgment be entered in their favor and against the Defendant in the amount of $881,410.24 as to the causes of action for "dolo" and fraud, as well as costs and attorney's fees in the amount of $31,725. Plaintiffs also request that pre-judgment and post-judgment interest be awarded.

## FINDINGS OF FACT[1]

1. Hispanic Federation is a nonprofit public benefit corporation dedicated to supporting Hispanic families and strengthening Latino institutions through work in the areas of education, health, immigration, civic engagement, economic improvement, and environment. (Statement under the Penalty of Perjury of Charlotte Gossett-Navarro, Puerto Rico Chief Director of Hispanic Federation, Exhibit 12).

2. The Solar Foundation was a nonprofit organization dedicated to advancing the use of solar and solar-compatible technologies worldwide and increasing access to this energy source to lift up communities and to address climate change. In 2021, The Solar Foundation merged with Interstate Renewable Energy Council ("IREC"). (Statement under the Penalty of Perjury of Larry Sherwood, President and CEO of IREC, Exhibit 13).

3. After Hurricane Maria struck Puerto Rico on September 20, 2017, both Hispanic Federation and The Solar Foundation sought to help with the recovery of the island. For instance, after September 20, 2017, The Solar Foundation began assisting in Hurricane Maria recovery-efforts, leading initiatives and projects to install solar and battery storage at health clinics, community centers, and other critical locations in Puerto Rico as part of the rebuilding efforts in the disaster-struck island. (Exhibits 12-13).

---

[1] These findings are based on the statements under the penalty of perjury submitted by Plaintiffs (Exhibits 12 and 13), as well as the documentary evidence admitted at the hearing, Exhibits 1 through 11.

4.  One of the projects led by The Solar Foundation as part of the Hurricane Maria recovery efforts, and in conjunction with other nonprofit organizations, was the installation of a solar energy station in Plaza del Mercado de Río Piedras, a local marketplace. (Exhibit 13). The purpose of the project was so that the market had a reliable energy source, even after a natural disaster. (Exhibit 12).

5.  The Solar Foundation partnered with Hispanic Federation for the Rio Piedras Plaza del Mercado solar energy project. The project was funded by charitable donations. (Exhibit 13 at 2).

6.  On November 19, 2018, Plaintiffs agreed with Uriarte-Otheguy that he and his company, New Energy Consultants & Contractors, LLC, would build the solar energy station at Plaza del Mercado de Río Piedras. (*Id.*)

7.  Pursuant to the agreement, Uriarte-Otheguy would build a photovoltaic solar energy system, which included hundreds of polycarbon PV modules, a racking system, a Tesla PowerPack battery, and inverters, among other items. (*Id.*)

8.  The total cost of the project to be paid by the Plaintiffs was nearly $1 million and was supposed to be completed by April 30, 2019. (Exhibit 12 at 2).

10.  Soon after agreeing on the scope of the work for the project, Uriarte-Otheguy represented that work had begun. Plaintiffs issued payments to Uriarte Otheguy totaling $881,410.24. Exhibits 1-3.

9.  The $881,410.24 paid by the Plaintiffs included $390,000 paid pursuant to Uriarte-Otheguy's representations and insistence that payment for the Tesla PowerPack battery needed to be completed. (Exhibit 12 at 2; Exhibits 4-8).

10.  In insisting that payment for the Tesla PowerPack battery was needed, Uriarte-Otheguy also represented that he was precluded from providing Tesla's invoice showing actual acquisition of the battery due to Tesla's protection of its pricing information. (Exhibit 12 at 2; Exhibit 13 at 2; Exhibit 1).

11.  Between late 2018 and October 10, 2019, Uriarte-Otheguy stopped working on the project without notifying the Plaintiffs. (Exhibits 12 at 2, Exhibit 13 at 2).

12.  After learning that work on the project had stopped, Plaintiffs also learned that Uriarte-Otheguy never applied to the project the payments made by them for the purchase of equipment and materials, despite Uriarte-Otheguy's representations that he had acquired the same. For example, Uriarte-Otheguy never forwarded to Tesla the amounts paid by Plaintiffs for the purchase of the

PowerPack battery and the battery was never acquired despite his representations to the contrary. (Exhibit 12 at 2).

13. The Defendant never completed the project. Uriarte-Otheguy simply retained the funds paid by Plaintiffs and never refunded the amounts paid for the project, including for the equipment and materials that were never purchased by him. (Exhibit 13 at 3).

14. On December 13, 2019, Plaintiffs, through their attorney, sent a letter to Uriarte-Otheguy, demanding payment for the amounts paid for the project, including the purchase of the Tesla PowerPack battery. (Exhibit 9).

15. On December 4, 2020, Plaintiffs sent a second demand letter to Uriarte-Otheguy, though his counsel, William López Caratini. (Exhibit 10).

16. This diversity jurisdiction action was commenced on November 30, 2021. (Docket No. 1).

## APPLICABLE LAW AND DISCUSSION

Under the Puerto Rico Civil Code of 1930, "[t]hose who in fulfilling their obligations are guilty of fraud, negligence, or delay, and those who in any manner whatsoever act in contravention of the stipulations of the same, shall be subject to indemnify for the losses and damages caused thereby." P.R. Laws Ann. tit. 31, § 3018. "[C]ontractual dolo is a broad term that includes deceit, fraud, misrepresentations, undue influence and other insidious machinations." *P.R. Tel. Co. v. SprintComm, Inc.*, 662 F.3d 74, 99 (1st Cir. 2011). Dolo is differentiated from mere negligence in that it entails a malicious intent to do harm; it "implies will, and not merely an omission." *Event Producers, Inc. v. Tyser & Co. N. Am., Inc.*, 854 F. Supp. 35, 38 (D.P.R. 1993). "Dolo can take two forms: (1) dolo in the formation of contracts, and (2) dolo in the performance of contractual obligations." *Portugues-Santana v. Rekomdiv Int'l.*, 657 F.3d 56, 59-60 (1st Cir. 2011)(*citing P.C.M.E. Commercial, S.E. v. Pace Membership Warehouse, Inc.*, 952 F. Supp. 84, 92 (D.P.R. 1997)).

"Dolo requires a deceitful and intentional avoidance of contractual obligations." *Punta Lima, LLC v. Punta Lima Dev. Co., LLC.*, 440 F. Supp. 3d 130, 154 (D.P.R. 2020).

> A party acts with *dolus* when that party willfully fails to perform an obligation. . . . [A] finding of *dolus* requires a finding that the breaching party intentionally breached an obligation that it knew was binding, and . . . a court must analyze the subjective intent of the breaching party in order to make a finding of *dolus*.

*Id.* at 155 (*quoting Servicios Comerciales Andinos, S.A. v. Gen. Elec. Del Caribe, Inc.*, 145 F.3d 463, 477 (1st Cir. 1998)). For dolo to exist, a mischievous act is not needed, only the debtor's knowledge of his or her own lack of compliance, "with the consciousness that the creditor's expectation will be affected." *Century Packing Corp. v. Griffin Specialty Equip. Co.*, 438 F. Supp. 2d 16, 26 (D.P.R. 2006)(*citing Mayaguez Hilton Corp. v. Betancourt*, 156 D.P.R. 234 (2002)).

Furthermore, under Article 1060 of the Puerto Rico Civil Code, "[t]he losses and damages for which a debtor in good faith is liable, are those foreseen or which may have been foreseen, at the time of constituting the obligation, and which may be a necessary consequence of its nonfulfillment." P.R. Laws Ann. tit. 31, § 3024; *see also Oriental Fin. Group, Inc. v. Fed. Ins. Co.*, 483 F. Supp. 2d 161, 165 (D.P.R. 2007). In case of fraud (dolo), however, the aggrieved party may recover all damages that originate from the nonfulfillment of the obligation. *Colon v. Blades,* 717 F. Supp. 2d 175, 185 (D.P.R. 2010)(Arenas, M.J.); P.R. Laws Ann. tit. 31, § 3024. Thus, under Puerto Rico law, a plaintiff alleging a claim under Article 1060 must show that in the performance of the contract (1) a party willfully, intentionally, or deceitfully avoided its contractual obligations; (2) damages occurred; and (3) a causal relationship existed between the

contractual dolo and the damages suffered. *Bauza v. Universal Ins. Co.*, Civil No. 18-1705, 2020 WL 13158669, 2020 U.S. Dist. LEXIS 263899, at *16 (D.P.R. Aug. 4, 2020).

Fraud, on the other hand, involves a different, albeit similar analysis. Judge Dominguez put it best in *Generadora de Electricidad del Caribe, Inc. v. Foster Wheeler Corp.*, 92 F. Supp. 2d 8, 18 (D.P.R. 2000)(citations omitted), when he explained that

> fraud and 'dolo' are not synonymous concepts and must not be treated as such by this Court. Although the distinction is subtle, Puerto Rico's Supreme Court has described 'dolo' as the genus and fraud as one of several species alongside with deceit, false representations, undue influence, and other insidious machinations. It follows, then, that a fact pattern involving contract fraud will always involve 'dolo', but a fact pattern involving 'dolo' will not always involve fraud. The concept of 'dolo', therefore, includes fraud as its most heightened species, but also includes other less heightened modes such as 'undue influence' and 'insidious machination[s]'. Indeed, 'dolo' may be manifested by the presence of malice or intent without accompanying false representations, belief in false representations, or detrimental reliance. Such would be the case of a party who contracts or performs a contract through undue influence or with insidious machinations, but not with fraud.

Here, the distinction is immaterial inasmuch as a finding of fraud (as opposed to just dolo) is supported by the evidence. First, the uncontroverted evidence (and it is uncontroverted because Defendant disappeared from the case thus failing to contest both the allegations in the complaint and the damages to be awarded) demonstrates that Uriarte-Otheguy deceitfully avoided his contractual obligation to build the solar energy station at Plaza del Mercado Rio Piedras. He was paid in excess of $800,000 and never completed the project. The documentary evidence shows, for instance, that he insisted in payment to acquire a Tesla battery pack but would not provide invoices from Tesla to evidence the acquisition and/or the price of said equipment. (Exhibits 1 and 7). The

Plaintiffs paid $390,000 to the Defendant that were supposed to be used for the purchase of the battery pack as represented by Uriarte-Otheguy in emails. (Exhibits 1-8). The battery pack was never purchased and there is no evidence as to where the money went. Based on the foregoing, the Court can make a reasonable inference that the funds were obtained through materially false representations, and therefore, through fraud and deceit, because Uriarte-Otheguy never intended to purchase the equipment and materials, nor complete the project. An additional reasonable inference that can be made is that the Defendant, at best, used the funds for purposes unrelated to the Plaintiffs' project, and, at worst, misappropriated the funds for his personal benefit. Again, a finding of fraud is supported here, but at the very least, the Defendant is liable for the lesser theory of dolo for consciously and willfully avoiding his contractual obligation to the detriment of Plaintiffs. And as per article 1060, Defendant is liable for all damages that originate from the nonfulfillment of the obligation.

Second, damages have certainly occurred in this case. Plaintiffs made payments under the contract for a project that was never completed [2] thereby incurring in significant losses. The Plaintiffs proffered that they had to complete the project at an additional cost to them. However, they are only seeking damages in the form of the funds paid to Uriarte-Otheguy for the project as well as costs, attorney's fees and interest. Exhibit 3 outlines the payments made and they total $881,410.24.

---

[2] To be sure, Plaintiffs acknowledged at the default hearing that some work was done as part of the project. However, the work to complete the project after the Defendant walked away required significant effort and expenses. It was described at the hearing as basically starting from scratch.

Third, there is no question that the there is a causal nexus between the conduct of Uriarte-Otheguy and the damages suffered by the Plaintiffs. The monetary losses sustained by the Plaintiffs are the direct and immediate result of Uriarte-Otheguy's conduct in avoiding his contractual obligation to build the solar energy station at the Plaza del Mercado de Rio Piedras. Plaintiffs fulfilled their obligation to fund the project and paid the money to the Defendant. The Defendant walked away from the project having done very little and refused to reimburse the money.

Lastly, the Court finds that an award of attorney's fees as well as pre-judgment interest is warranted given the Defendant's obstinate conduct throughout this litigation.[3] *See* P.R. Laws Ann. tit. 32, App. III, Rules 44.1(d) and 44.3(b); *see also IOM Corp. v. Brown Forman Corp.*, 627 F.3d 440, 451-52 (1st Cir. 2010). The amount of attorney's fees requested is supported by the evidence (Exhibits 11 and 14). In crafting the lodestar, the Court adopts the calculation presented in Exhibit 11 as it finds it to be reasonable in consideration of the legal work and expertise required to obtain the outcome secured by Plaintiffs' counsel in this case. *See De Jesus-Nazario v. Rodriguez*, 554 F.3d 196, 207 (1st Cir. 2009). The Court also takes into consideration that Plaintiffs were required to deal with an obstructionist adversary.

## CONCLUSION

In view of the above, and after careful consideration of the evidence presented at the default hearing, the Court will enter judgment for the Plaintiffs and against the

---

[3] *See* Docket Nos. 51, 61 and 73.

Defendant as follows. For the causes of action of dolo and fraud[4], the Defendant shall pay Plaintiffs the amount of $881,410.24. Plaintiffs are also awarded pre-judgment and post-judgment interest. Post-judgment interest shall begin to accrue as of the entry of judgment in this case pursuant to 28 U.S.C. § 1961. Pre-judgment interest shall be calculated from December 13, 2019, until the date of the entry of judgment at a rate of 9.5% per annum. Attorney's fees are also awarded in the amount of $31,725.

**SO ORDERED.**

In San Juan, Puerto Rico this 12th day of September, 2024.

S/Héctor L. Ramos-Vega
HÉCTOR L. RAMOS-VEGA
UNITED STATES MAGISTRATE JUDGE

---

[4] Plaintiffs appear to have abandoned their unjust enrichment claim. That makes sense because under Puerto Rico law, "[t]he doctrine of unjust enrichment does not apply where there is a contract that governs the dispute at issue." *Rivera v. Marriott Int'l, Inc.*, 456 F. Supp. 3d 339-340 (D.P.R. 2020)(*citing Montalvo v. LT's Benjamin Records, Inc.*, 56 F. Supp. 3d 121, 136 (D.P.R. 2014)).